FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 05, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RYAN LEE D., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 2:18-CV-00184-RHW <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 12, 13. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 1383(c)(3) of the Commissioner of Social Security's final decision, which denied his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 1, 15, 28. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS**

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 1

Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I. Jurisdiction

Plaintiff filed his application for Supplemental Security Income on March 31, 2015. *See* AR 15, 172-77. His alleged onset date of disability was his date of birth—January 19, 1991.[1] AR 172. Plaintiff's application was initially denied on July 6, 2015, *see* AR 99-102, and on reconsideration on October 29, 2015. *See* AR 109-113. Plaintiff then filed a request for a hearing on December 21, 2015. AR 114-16.

A hearing with Administrative Law Judge ("ALJ") Donna L. Walker occurred on February 22, 2017. AR 34, 36. On April 27, 2017, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for supplemental security income. AR 12-28. On April 11, 2018, the Appeals Council denied Plaintiff's request for review, AR 1-6, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On June 8, 2018, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 1. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g).

---

[1] However, for claims under Title XVI, the application filing date (or protective filing date) is the earliest possible alleged onset date, which in this case was March 31, 2015. *See* DI 25501.370(A)(1).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 2

## II. Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572, 416.972. If the claimant is engaged in substantial

activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571, 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f),

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 4

416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g). The scope of review under these sections is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th

Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954-59 (9th Cir. 2002).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 24 years old when he filed his application for benefits, which the regulations define as a younger person. AR 27, 72; *see* 20 C.F.R. § 416.963. He graduated from high school and can communicate in English. AR 27, 53, 189, 191. He has no past relevant work. AR 27.

## V. The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from March 31, 2015 (the date Plaintiff filed his application for benefits) through April 27, 2017 (the date the ALJ issued her decision). AR 16, 28.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date he filed his application for benefits (citing 20 C.F.R. § 416.971 *et seq.*). AR 17.

**At step two**, the ALJ found Plaintiff had the following severe impairments: infantile cerebral palsy, syncope secondary to orthostatic hypotension, headaches, other unspecified cardiac dysrhythmias, borderline intellectual functioning, and math and reading disorder (citing 20 C.F.R. § 416.920(c)). AR 17.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926). AR 17-19.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c), including the abilities to lift and carry up to 50 pounds occasionally (up to 1/3 of the workday) and 25 pounds frequently (up to 2/3 of the workday). AR 20. The ALJ also found that Plaintiff could see, hear, communicate, sit for up to six hours, stand and walk for up to six hours, push, pull, balance, climb ramps and stairs, bend at the waist, kneel, bend at the knees, and crawl. AR 20. With respect to the use of his hands, the ALJ found that Plaintiff had the unlimited ability to handle (gross manipulation), finger (fine manipulation), feel (use of skin receptors), and reach in all directions including overhead. AR 20. The ALJ limited his ability to reach with his left upper and lower extremities to only occasionally. AR 20. However, the

ALJ found that Plaintiff could never climb ladders, ropes, scaffolds, or be exposed to unprotected heights. AR 20.

With respect to environmental limitations, the ALJ found that Plaintiff had the unlimited ability to be exposed to extreme cold, extreme heat, wetness, humidity, noise, odors, dust, gases, poor ventilation, and fumes, but that he should avoid exposure to vibrations and hazards, such as machinery. AR 20.

With respect to Plaintiff's mental abilities, the ALJ found that Plaintiff was able to understand, remember, and apply information, and also able to interact with other people such as coworkers, supervisors, and the public. AR 20. He could concentrate, persist and maintain pace, adapt and manage, focus his attention and stay on task at a sustained rate, sustain an orderly routine, regularly attend work, and work a full day without needing more than the allotted number of rest periods. AR 20. However, the ALJ found that Plaintiff worked best in a stable, low-pressure work setting with clear expectations of the work to be performed, and that he learned best when tasks were either taught orally or by demonstration. AR 20. Because Plaintiff did not have any past relevant work, transferability of job skills was not an issue. AR 27.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform. AR 27. These

included a grocery bagger, a car washer, and an advertising material distributor. AR 27.

## VI. Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. ECF No. 12 at 19. Specifically, he argues the ALJ: (1) improperly discredited his subjective pain complaint testimony; (2) improperly weighed the medical opinion evidence; and (3) did not include all his mental limitations in the hypothetical to the vocational expert. *Id.* at 13-17.

## VII. Discussion

**A. The ALJ did not Improperly Reject Plaintiff's Subjective Complaints**

Plaintiff argues the ALJ erred by discounting the credibility of his testimony regarding his subjective symptoms. ECF No. 12 at 14-16. Specifically, he argues that the ALJ erred by doing so in part on the basis that he was able to hunt, fish, cook, mow the lawn, wash dishes, do the laundry, and go to the store. *Id.* at 15. He also argues that his fainting symptoms and cognitive deficits prevented him from gainful employment. *Id.* at 15-16.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective

medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id*. Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, Plaintiff testified that he was unable to work due to his episodes of orthostatic hypotension, which caused him to intermittently faint. AR 54. He testified that this began when he was 22 years old. AR 57-58. He testified that the frequency of these episodes varied—sometimes he would only faint once per month, but other times he would faint twice per week—but that it occurred more often with exertion. AR 55. Plaintiff acknowledged that his doctor prescribed him

medication for this condition, but stated that it made him sweat, "feel cruddy," and vomit. AR 54. After two weeks, he stopped taking it. AR 54.

The medical expert at the hearing—Gerald Seligman, M.D.—testified that orthostatic hypotension is common in young adults, is preventable, and is not work preclusive. AR 42-43. Dr. Seligman testified that Plaintiff could prevent these episodes by taking his prescription medication, increasing his fluid intake, and wearing compression stockings. AR 42. He noted Plaintiff's non-compliance with his medication. AR 42. However, Dr. Seligman opined that even without taking the medication, Plaintiff could still prevent these episodes by just increasing his fluid intake and wearing compression stockings. AR 43.

The ALJ found that the medically determinable impairments could reasonably be expected to produce some degree of the symptoms Plaintiff alleged. AR 21. However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 21.

The ALJ offered multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. *See* AR 21-26. First, the ALJ discounted Plaintiff's subjective complaints because they were belied by his daily activities. AR 21. The ALJ noted an occasion in which Plaintiff went to the emergency room for an ankle sprain because he had been running and stepped in a

hole. AR 21; *see* AR 651-52. The ALJ noted another occasion in which Plaintiff went to the emergency room for a concussion because he had been "bucked off a horse." AR 21; *see* AR 537-38. While in the emergency room, Plaintiff indicated that he regularly rode untrained, bucking horses. AR 537, 539; *see also* AR 598. He also indicated that he rode bulls. *See* AR 578. He told another provider he participated in rodeo team roping. AR 524. On another occasion, Plaintiff went to the emergency room for shoulder pain because he had been "moving a bunch of railroad ties earlier" and "also lifting a TV at home." AR 560. On another occasion, Plaintiff went to the emergency room for throat discomfort after he had been bucking bales of hay. AR 567. The record contains other instances of Plaintiff bucking bales of hay. *See* AR 543. On another occasion, Plaintiff went to the emergency room after he had been shoveling snow off a mobile home roof. AR 659. On another occasion, Plaintiff went to the emergency room for chest pain and told his doctor that he had been hunting recently but was able to tolerate exertion. AR 667. Finally, Plaintiff's mother submitted a report in which she indicated that Plaintiff could hunt, fish, cook, mow the lawn, wash dishes, do laundry, and go to the store. AR 198-200. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of subjective complaints. *Molina*, 674 F.3d at 1113; *see also Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(3)(i).

Plaintiff argues that the ALJ erred by discounting his credibility based on his ability to hunt and do household chores. ECF No. 12 at 15. Plaintiff cites several Ninth Circuit cases holding that a claimant's ability to perform some daily activities, such as grocery shopping, cooking, watching television, driving, etc., does not necessarily detract from his or her credibility. *Id.* (citing *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001); *Reddick v. Chater*, 157 F.3d 715, 722-24 (9th Cir. 1998); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Even assuming it is error to discount symptom testimony based on the claimant's ability to perform household tasks (which, in many situations, it is not),[2] Plaintiff fails to explain how the ALJ erred in discounting his symptom testimony based on his ability to hunt, fish, run, ride bucking horses, ride bulls, team rope in the rodeo, move numerous railroad ties, lift a television, buck bales of hay, and shovel snow off a roof. Because this level of activity was inconsistent with the limitations Plaintiff claimed to have, *see* AR 55, this was a proper basis for discounting his credibility. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *accord Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ also gave another clear and convincing reason for discrediting Plaintiff's subjective complaint testimony—his complaints were inconsistent with

---

[2] It is only error, for instance, to discount a claimant's symptom testimony when the activities do not consume a substantial part of the claimant's day or are not transferable to a work setting. *See Vertigan*, 260 F.3d at 1049-50; *Fair*, 885 F.2d at 603.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 13

the medical evidence. *See* AR 21, 23. The ALJ recognized that Plaintiff had orthostatic hypotension and cognitive deficits, which imposed some limitations. AR 21. With respect to Plaintiff's physical impairments, the ALJ noted Plaintiff's mild examination findings and generally normal medical tests, including normal blood tests, electrocardiograms, computerized tomography (CT) scans, cervical x-rays, cerebral angiograms, and magnetic resonance imaging (MRI) studies. AR 21-22; *see* AR 398-400, 418, 537, 542, 578-80, 589-91, 661, 670. Plaintiff also told a provider that he had not experienced any fainting episodes for six months. AR 524. Finally, the ALJ noted Dr. Seligman's testimony that Plaintiff's fainting symptoms could be controlled with treatment compliance—working with his doctor to titrate medications, actually taking the medications, wearing compression socks, eating and hydrating properly, and living a healthy lifestyle. AR 24-25.

With respect to Plaintiff's cognitive deficits, the ALJ noted that Plaintiff was able to graduate high school and tested within average ranges in several areas, including communication, daily living skills, socialization, and reading vocabulary. AR 23; *see* AR 360, 365-67. The ALJ also discussed two psychological examinations. AR 23-24. The first was done by Renee Thompson, Psy.D., who acknowledged Plaintiff's cognitive deficits but nevertheless opined that he was "capable of understanding, remembering and carrying out simple work-related instructions," although she also believed he could need "additional support to

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 14

understand and complete tasks."[3] AR 461. The second was done by John Arnold, Ph.D., who opined that Plaintiff had a "fair" psychological prognosis. AR 528. Dr. Arnold opined that Plaintiff could graduate from a vocational program with some accommodations and he did not limit Plaintiff's employment ambitions from a psychological standpoint. AR 528-29. An ALJ may discount a claimant's subjective symptom testimony when it is inconsistent with the medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Plaintiff argues the ALJ erred in discounting his claim that he could not work due to his fainting symptoms. ECF No. 12 at 15. However, as discussed above, these were not work preclusive and could be effectively controlled with treatment. *See infra* at 11, 14. Plaintiff also argues that the ALJ erred in discounting his claim that he could not work due to his cognitive deficits, pointing to his "school records and the findings of the psychologists, Renee Thompson, PhD [sic] and John Arnold, PhD." ECF No. 12 at 15-16. However, as also discussed above, none of these sources precluded Plaintiff from working. *See infra* at 14-15.

---

[3] Dr. Thompson actually conducted two psychological examinations. *See* AR 392-97, 455-61. In the first, which she performed two years prior, she opined that Plaintiff was "capable of and would benefit from gainful employment." AR 396.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 15

When the ALJ presents a reasonable interpretation that is supported by substantial evidence, it is not the Court's role to second-guess it. For the reasons discussed above, the ALJ did not err when discounting Plaintiff's subjective complaint testimony because the ALJ provided multiple clear and convincing reasons for doing so.

///

**B.   The ALJ did not Err in Weighing the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in evaluating and weighing the medical opinion evidence. ECF No. 12 at 16-17. Specifically, he argues that the ALJ gave too much weight to the non-examining doctors' opinions, that the ALJ failed to satisfy the "specific and legitimate" standard, and that several treating and examining doctors' opinions were uncontradicted. *Id.*

Title XVI's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. § 416.927(c)(1)-(2). Generally, a treating physician's opinion carries more weight than an examining physician's, and an

examining physician's opinion carries more weight than a non-examining physician's. *Holohan*, 246 F.3d at 1202.

If a treating or examining doctor's opinion is contradicted by another doctor's opinion—as is the case here—an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.* An ALJ satisfies the "specific and legitimate" standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012. In contrast, an ALJ fails to satisfy the standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

Plaintiff baldly asserts that adherence to the "specific and legitimate" standard "was not done" here. ECF No. 12 at 17. However, the ALJ, over seven single-spaced pages, summarized Plaintiff's voluminous treatment records and the findings and opinions of his many medical providers. *See* AR 20-26. The ALJ explained which medical opinions she found persuasive, which ones she did not, and why she found each one either persuasive or unpersuasive. *See* AR 24-26. Contrary to Plaintiff's conclusory assertion, the ALJ set out a detailed and

thorough summary of the facts and conflicting evidence, stated her interpretation thereof, and made findings. The ALJ therefore satisfied the "specific and legitimate" standard.

Plaintiff also argues that the ALJ gave too much weight to the non-examining physicians' opinions, particularly the two that testified at the hearing. ECF No. 12 at 16. However, ALJs are required to consider—and also entitled to rely on—non-examining physicians' opinions. *See* 20 C.F.R. § 416.913a(b)(1). The ALJ gave great weight to the opinions of the two doctors who testified at the hearing because their opinions were the most consistent with the totality of the medical evidence and Plaintiff's test results. AR 24-25.

Plaintiff also makes much of the fact that "there was an abnormal tilt test," which is used to evaluate the cause of unexplained fainting. ECF No. 12 at 17; AR 512. Plaintiff emphasizes the tilt test result "is objective and is not contradicted." ECF No. 12 at 17. Plaintiff also emphasizes that the diagnosis "of orthostatic hypertension [sic] is not rebutted in this case."[4] *Id.* Plaintiff is correct that he indisputably has orthostatic hypotension, which the ALJ found to be one of his severe impairments. *See* AR 17, 21-25. However, as the ALJ explained and as is discussed above, Plaintiff's fainting symptoms were not work preclusive and could

---

[4] Plaintiff cites the medical records from Gerhard Muelheims, M.D. and Romeo Pavlic, M.D., who conducted the testing, diagnosed Plaintiff, and prescribed him medication. AR 22-23, 477-79, 481-503. Neither of these physicians provided any opinions regarding Plaintiff's functional limitations. *Id.*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 18

be effectively controlled with treatment, which Plaintiff did not comply with. *See infra* at 11, 14.

Plaintiff finally argues that "the opinions expressed by Renee Thompson, PhD [sic] and John Arnold, PhD are also uncontradicted." ECF No. 12 at 17. However, as also discussed above, neither of these psychologists opined that Plaintiff was incapable of working. *See infra* at 14-15. For these reasons, the ALJ did not error in evaluating and weighing the medical opinion evidence.

### C. The ALJ did not Err in Framing the Hypothetical Question for the Vocational Expert

Plaintiff also argues that the ALJ erred in framing the hypothetical question for the vocational expert because the question did not include all of Plaintiff's limitations. ECF No. 12 at 17. However, the hypothetical the ALJ posed to the vocational expert was consistent with the ALJ's findings relating to Plaintiff's residual functional capacity. *Compare* AR 20 *with* AR 65-66, 68. The ALJ included all of Plaintiff's limitations, and the only omitted limitations were those that the ALJ found did not exist. Plaintiff's argument here essentially just restates his prior arguments that the residual functional capacity did not account for all his limitations. Courts routinely reject this argument. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008); *Rollins*, 261 F.3d at 857.

## VIII. Order

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 19

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this 5th day of September, 2019.

<u>s/Robert H. Whaley</u><br>
ROBERT H. WHALEY<br>
Senior United States District Judge